IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN



| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | INDICTMENT |
| v. | ) | Case No. 98 CR 91-S |
| | ) | |
| PETER DANIEL YOUNG and | ) | 18 U.S.C. § 1951 |
| JUSTIN CLAYTON SAMUEL, | ) | 18 U.S.C. § 43(a) |
| | ) | 18 U.S.C. § 2 |
| Defendants. | ) | |

COUNT 1

THE GRAND JURY CHARGES:

1. At all times material to this indictment:

   (a) a publication called "The Final Nail" was published on an Internet website maintained under the name of the Animal Liberation Front ("ALF"). The Final Nail advocates releasing animals and causing damage to fur-related businesses as a means of forcing those businesses to cease or curtail their operations. The Final Nail included a list ("the target list") of fur farms, ranches, and similar agricultural targets (collectively referred to as "the fur farms").

   (b) The activities of the fur farms affected interstate commerce in that the farms purchased, used and sold articles and commodities that moved in interstate commerce among the states.

2. During the period from on or about October 17, 1997, through on or about October 29, 1997, in the Western District of Wisconsin, and elsewhere, the defendants,

PETER DANIEL YOUNG and
JUSTIN CLAYTON SAMUEL,

did knowingly and intentionally conspire and agree with one another and with other persons unknown to the grand jury, to obstruct, delay, and affect commerce as that term is defined in 18 U.S.C. § 1951, and the movement of articles and commodities in such commerce, by extortion, as that term is defined in 18 U.S.C. § 1951.

3. In furtherance of this conspiracy and to effect the objects thereof, the defendants, PETER DANIEL YOUNG ("YOUNG") and JUSTIN CLAYTON SAMUEL ("SAMUEL"), together with other persons unknown to the grand jury, agreed to induce and to attempt to induce the fur farms to voluntarily cease business operations or to curtail their business in fur production as a result of the increased cost of engaging in the fur trade resulting from the damage and loss, or threat of such damage and loss, of fur bearing livestock caused by the wrongful use of actual and threatened force, violence and fear of injury to property.

4. It was part of the conspiracy that the defendants YOUNG and SAMUEL and unknown co-conspirators, obtained, kept, maintained and relied upon a printed copy of the target list and employed methods published and advocated in the Final Nail and other ALF materials to release fur farm livestock, to inflict damage on fur farms, and to avoid detection and apprehension.

5. It was further part of the conspiracy that the defendants YOUNG and SAMUEL and unknown co-conspirators:

   (a) obtained, kept, maintained and relied upon detailed local maps for

use in locating addresses on the target list, including the fur farms.

(b) conducted surveillance of fur farms listed on the target list.

(c) trespassed on fur farms and on adjoining properties for the purposes of conducting surveillance and gaining clandestine access to the farms.

(d) participated in raids on fur farms at night under the cover of darkness.

(e) cut fences and locks, destroyed property, and released livestock.

## OVERT ACTS

6. In furtherance of the conspiracy and to effect its unlawful objectives, the defendants YOUNG and SAMUEL committed the following overt acts, among others:

(a) From on or about October 16 to October 17, 1997, the defendants traveled in interstate commerce from South Dakota to Iowa.

(b) From on or about October 21 to October 23, 1997, the defendants traveled in interstate commerce from Iowa to Wisconsin.

(c) Between on or about October 16, 1997 and October 29, 1997, the defendants caused to be transported in interstate commerce a copy of the fur farm target list along with bolt cutters used to facilitate the release of fur farm livestock.

(d) On about October 16 or 17, 1997, the defendants: (i) trespassed onto the property of the Turbak Mink Ranch in Watertown, South Dakota; (ii) cut holes in the exterior fence; and (iii) opened cages and released approximately 2,400 mink.

(e) On or about October 17 or 18, 1997, the defendants or their co-conspirators: (i) trespassed onto the property of the Circle K Fur Farm, Sioux City,

Iowa; (ii) cut and knocked down sections of fencing; and (iii) released approximately 2,000 mink and numerous foxes from their individual cages.

(f) On or about October 21, 1997, the defendants or their co-conspirators: (i) trespassed onto the property of the Fassett Fur Farm in Webster City, Iowa; (ii) destroyed paper tags containing valuable identification and breeding information regarding the mink; and (iii) unsuccessfully attempted to release mink from the cages.

(g) On or about October 24, 1997, the defendants trespassed onto a property adjacent to the Short Fur Farm of Granton, Wisconsin.

(h) On or about October 25, 1997, the defendants: (i) trespassed onto the property of the Smieja Fur Farm in Independence, Wisconsin; (ii) cut and knocked down approximately 30 feet of perimeter fence of the Smieja Fur Farm; and (iii) released from the Smieja Fur Farm approximately 800 breeding stock mink.

(i) On or about October 26, 1997, the defendants: (i) trespassed onto the property of the Dittrich Minkery in Medford, Wisconsin; (ii) cut and knocked down approximately 400 feet of perimeter fence of the Dittrich Minkery; (iii) released from the Dittrich Minkery approximately 2,500 mink; (iv) trespassed onto the property of the Ott Mink Farm in Tomahawk, Wisconsin; (v) opened a gate to a perimeter fence; and (vi) opened approximately 350 mink pens releasing more than 350 mink.

All in violation of Title 18, United States Code, Section 1951, and Title 18, United States Code, Section 2.

4

## COUNT 2

THE GRAND JURY FURTHER CHARGES:

1. At all times material to this Indictment, the Smieja Fur Farm, of Independence, Wisconsin, was engaged in breeding and harvesting Blue Iris mink in interstate commerce and its activities affected interstate commerce in that it purchased, used and sold articles and commodities which moved in interstate commerce from states outside Wisconsin.

2. On or about October 25, 1997, in the Western District of Wisconsin the defendants,

PETER DANIEL YOUNG  and
JUSTIN CLAYTON SAMUEL,

did knowingly and unlawfully obstruct, delay, affect, and attempt to obstruct, delay and affect commerce as that term is defined in Title 18, U.S.C. § 1951, and the movement of articles and commodities in such commerce, by extortion, as that term is defined in Title 18, U.S.C. § 1951, in that the defendants did attempt to obtain the property of Smieja Fur Farm with its consent induced by the wrongful use of actual and threatened force, violence and fear, including fear of economic harm, in that the defendants did deliberately release approximately 800 Blue Iris breeding stock mink valued at approximately $200,000, with the intent that the loss of the fur farm's livestock cause economic harm to the fur farm, and fear of economic harm, to such degree that the owners of the farm cease or curtail their business operations.

All in violation of Title 18, United States Code, Section 1951, and Title 18, United States Code, Section 2.

## COUNT 3

THE GRAND JURY FURTHER CHARGES:

1. At all times material to this Indictment, the Dittrich Minkery of Medford, Wisconsin, was engaged in breeding and harvesting mink in interstate commerce and its activities affected interstate commerce in that it purchased, used and sold articles and commodities which moved in interstate commerce from states outside Wisconsin.

2. On or about October 26, 1997, in the Western District of Wisconsin the defendants,

> PETER DANIEL YOUNG   and
> JUSTIN CLAYTON SAMUEL,

did knowingly and unlawfully obstruct, delay, affect, and attempt to obstruct, delay and affect commerce as that term is defined in Title 18, U.S.C. § 1951, and the movement of articles and commodities in such commerce, by extortion, as that term is defined in Title 18, U.S.C. § 1951, in that the defendants did attempt to obtain the property of the Dittrich Minkery with its consent induced by the wrongful use of actual and threatened force, violence and fear, including fear of economic harm, in that the defendants did deliberately release approximately 2,500 mink with the intent that the loss of the minkery's livestock cause economic harm to the minkery, and fear of economic harm, to such degree that the owners of the minkery cease or curtail business operations.

All in violation of Title 18, United States Code, Section 1951, and Title 18, United States Code, Section 2.

6

## COUNT 4

THE GRAND JURY FURTHER CHARGES:

1. At all times material to this Indictment, the Ott Mink Ranch of Tomahawk, Wisconsin, was engaged in breeding and harvesting mink in interstate commerce and its activities affected interstate commerce in that it purchased, used and sold articles and commodities which moved in interstate commerce from states outside Wisconsin.

2. On or about October 26, 1997, in the Western District of Wisconsin the defendants,

> PETER DANIEL YOUNG  and
> JUSTIN CLAYTON SAMUEL,

did knowingly and unlawfully obstruct, delay, affect, and attempt to obstruct, delay and affect commerce as that term is defined in Title 18, U.S.C. § 1951, and the movement of articles and commodities in such commerce, by extortion, as that term is defined in Title 18, U.S.C. § 1951, in that the defendants did attempt to obtain the property of the Ott Mink Ranch with its consent induced by the wrongful use of actual and threatened force, violence and fear, including fear of economic harm, in that the defendants did deliberately release approximately 300 mink with the intent that the loss of the mink ranch's livestock cause economic harm to the mink ranch, and fear of economic harm, to such degree that the owners of the mink ranch cease or curtail their business operations.

All in violation of Title 18, United States Code, Section 1951, and Title 18, United States Code, Section 2.

## COUNT 5

THE GRAND JURY FURTHER CHARGES:

1. On or about October 17, 1997, through on or about October 29, 1997, in the Western District of Wisconsin and elsewhere, the defendants,

> PETER DANIEL YOUNG  and
> JUSTIN CLAYTON SAMUEL,

knowingly and intentionally conspired and agreed with one another and with other persons, unknown to the grand jury, to travel in interstate commerce for the purpose of causing physical disruption to the functioning of animal enterprises, and with the intent to cause physical disruption to the functioning of fur farms which are animal enterprises as that term is defined in 18 U.S.C. § 43(d), by damaging property and causing the loss of animals and records, thereby resulting in economic damage of more than $10,000 to those enterprises.

## OVERT ACTS

2. In furtherance of the conspiracy and to effect its unlawful objectives, the defendants YOUNG and SAMUEL committed the overt acts listed in Count 1 of this indictment, Paragraphs 6 (a)-(i), incorporated herein by reference.

In violation of Title 18, United States Code, Section 43(a), and Title18, United States Code, Section 2.

## COUNT 6

THE GRAND JURY FURTHER CHARGES;

On or about October 26, 1997, in the Western District of Wisconsin and elsewhere, the defendants,

> PETER DANIEL YOUNG and
> JUSTIN CLAYTON SAMUEL,

did knowingly travel in interstate commerce for the purpose of causing physical disruption to the functioning of an animal enterprise, and did intentionally cause physical disruption to the functioning of the Dittrich Minkery of Medford, Wisconsin, an animal enterprise as that term is defined in 18 U.S.C. § 43(d), by damaging property, destroying records and causing the loss of animals, thereby resulting in economic damage of more than $10,000 to that enterprise.

In violation of Title 18, United States Code, Section 43(a), and Title 18, United States Code, Section 2.

A TRUE BILL

*[signature]*
PRESIDING JUROR

*[signature]*
Peggy A. Lautenschlager
United States Attorney

Indictment returned: 9-16-98

9